# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No.  CR 25-3366 JB** |
| | § | |
| **JULIAN GUNTHER,** | § | |
| | § | |
| **Defendant.** | § | |

# MOTION TO DISMISS INDICTMENT
# AND DISQUALIFY UNITED STATES ATTORNEY

Julian Gunther, through his counsel of record, Dennis J. Candelaria, moves this Court to void and dismiss the indictment and to disqualify Ryan Ellison and any attorneys working under his supervision from participating in criminal prosecutions in this district.

## INTRODUCTION

The administration appointed Ryan Ellison as the interim U.S. Attorney for the District of New Mexico on April 17, 2025. After 120 days, on August 15, 2025, Ryan Ellison's lawful term as the interim U.S. Attorney ended under 28 U.S.C. § 546(c)(2).  The government then began to describe Mr. Ellison as the "Acting United States Attorney," as it did when it secured the instant indictment against Mr. Gunther on August 26, 2025.[1]

This circumvented the limitations that Congress has imposed on temporary service in important federal offices like U.S. Attorney. The Federal Vacancies Reform Act (FVRA) does not authorize Mr. Ellison's acting service, because among other problems he is statutorily ineligible.  *See* 5 U.S.C. § 3345(a). Any acting service under the FVRA would also be barred by that 120-day statutory clock. 28 U.S.C. §

---

[1] Lohmann, Patrick, Department of Justice Extends New Mexico U.S. Attorney's Term Amid Judicial, Senate Criticism, Source NM (August 15, 2025), https://sourcenm.com/2025/08/15/department-of-justice-extends-new-mexico-us-attorneys-term-amid-judicial-senate-criticism/

546(c)(2). Whether or not statutorily authorized, Mr. Ellison's continued service also violates the Appointments Clause. U.S. Const. Art II, § 2, cl. 2.

The only district to have weighed in on the issue has rejected the government's similar maneuver in New Jersey. *United States v. Giraud*, No. 1:24-cr-768, 2025 WL 2416737 (D.N.J. Aug. 21, 2025) (Brann, C.J., sitting by designation), *appeal docketed*, Nos. 25-2635, -2636 (3d Cir. Aug. 25, 2025). Most relevant here, the *Giraud* Court determined that the person purporting to serve as acting U.S. Attorney was not eligible to do so under the FVRA. *Id.* at *13–19 (applying § 3345(a)).

Mr. Ellison "was not lawfully acting as the United States Attorney in any capacity" on August 26, 2025 when the government obtained the indictment. *See id.* at *8. And he has no such lawful authority today. *See id.* at *27-28. This Court should therefore void and dismiss the indictment with prejudice. This Court should also disqualify Mr. Ellison and any attorneys working under his supervision from participating in criminal prosecutions in the district. The judges of this district should exercise their authority to appoint a proper interim U.S. Attorney under § 546(d).

## FACTUAL BACKGROUND

The most recent Senate-confirmed U.S. Attorney for the District of New Mexico, Alexander M. Uballez, resigned on February 17, 2025, at the President's direction.[2] Upon his resignation, first assistant Holland S. Kastrin began serving as acting U.S. Attorney. *Id.*

On April 17, 2025, the administration appointed Ryan Ellison as the interim U.S. Attorney for the district; his term expired on August 15, 2025.[3] On August 13, 2025, Mr. Ellison purported to "resign my position as Interim United States Attorney for the District of New Mexico." Ex. 1. But in the very next

---

[2] *See U.S. Attorney Alexander Uballez to Step Down . . .* , U.S. Dep't of Justice (Feb. 17, 2025), [District of New Mexico | U.S. Attorney Alexander Uballez to Step Down, Concluding Impactful Tenure in New Mexico | United States Department of Justice](#)

[3] *See Statement Regarding United States Attorney Ryan Ellison's Acting Appointment*, U.S. Dep't of Justice (Aug. 15, 2025), [District of New Mexico | Statement Regarding United States Attorney Ryan Ellison's Acting Appointment | United States Department of Justice](#)

sentence of his resignation letter, he announced that he "look[s] forward to continuing to lead the U.S. Attorney's Office for the District of New Mexico." *Id.* The next day, the Attorney General "designate[d] Ryan Ellison as First Assistant United States Attorney for the District of New Mexico, effective upon his resignation as United States Attorney for the District of New Mexico." Ex. 2. The Attorney General ordered that, as first assistant, "Mr. Ellison will have authority to serve as Acting United States Attorney upon a vacancy in that office, subject to the conditions and time limitations of the Federal Vacancies Reform Act of 1998." *Id.*

On August 8, 2025, the Chief Judge wrote to Mr. Ellion and informed him the judges declined to utilize their authority under 28 U.S.C. § 546(d) to appoint a United States Attorney. Ex. 3.

<center>LEGAL BACKGROUND</center>

This motion involves the interplay between two statutory regimes: 5 U.S.C. § 3345, which involves Executive Branch vacancies generally; and 28 U.S.C. § 546, which involves U.S. Attorney vacancies specifically.

## I.     5 U.S.C. § 3345 the Federal Vacancies Reform Act

The Federal Vacancies Reform Act, 5 U.S.C. § 3345, deals with executive branch vacancies generally. Section 3345(a) covers situations where an officer whose position requires appointment and confirmation "dies, resigns, or is otherwise unable to perform the functions and duties of the office[.]" Under subsection (c)(2), "the expiration of a term of office is an inability to perform the functions and duties of such office." The statute provides three options to fill the position on an acting basis. 5 U.S.C. § 3345(a)(1)-(3).

The first (and default) rule: an already-in-place first assistant can become the acting officer. Under subsection (a)(1), the first assistant in the office "shall perform the functions and duties of the office temporarily in an acting capacity." This provision "fills the role automatically." *Hooks v. Kitsap Tenant Support Services, Inc.*, 816 F.3d 550, 557 (9th Cir. 2016); *see also N.L.R.B. v. SW General, Inc.*, 580 U.S. 288, 295 (2017) (describing this as "a general rule"); *See United States v. Rose*, 537 F.Supp.2d 1172, 1173 (D.N.M. 2008) (explaining that the first assistant became acting U.S. Attorney in the immediate wake of the U.S.

<center>3</center>

Attorney's resignation). For this provision to apply, the relevant individual must have been serving as first assistant when the vacancy occurred.

The other two options are exceptions to that default rule; there are "two ways the President may override the automatic operation of" § 3345(a)(1), *Hooks*, 816 F.3d at 557, and instead select someone other than the then-first assistant.

First, under § 3345(a)(2), "the President (and only the President)" can select another individual as the acting officer, if that other individual is already "serv[ing]" in another position that requires Presidential "appointment" and Senate confirmation. Second, under § 3345(a)(3), "the President (and only the President)" can select another senior government leader as the acting officer if the individual satisfies three conditions. The individual must be currently serving as an Executive Branch employee in the same "agency." The individual must have served in a position in that agency for at least "90 days" within "the 365-day period preceding" the qualifying vacancy. And that position must have had a rate of pay "equal to or greater than" the rate provided in the "GS-15" scale.

Whichever way the administration selects the acting officer, the statutory scheme limits the time of that acting service. Under 5 U.S.C. § 3346(a)(1), an acting officer may serve "for no longer than 210 days beginning on the date the vacancy occurs."

The FVRA also provides a remedy for improperly appointed individuals: nullification. 5 U.S.C. § 3348(d)(1) provides that "[a]n action taken by any person who is not" properly serving as an acting officer "in the performance of any function or duty of a vacant office . . . shall have no force or effect." Under § 3348(d)(2), such actions "may not be ratified" later. This "Ratification Bar . . . applies only to those duties of an officer that are nondelegable." *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*, 107 F.4th 1064, 1073 (9th Cir. 2024).

## II.    28 U.S.C. § 546 – Vacancy of U.S. Attorney Office

Section 541 establishes the position of United States Attorney. It sets the default rule that U.S. Attorneys must receive Presidential appointment and Senate confirmation, instructing that "the President

shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district." 28 U.S.C. § 541(a).

Section 546 deals with U.S. Attorney vacancies specifically. The statute allows the Attorney General to make an interim appointment: under subsection (a), "the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant." Individuals serving as interim U.S. Attorneys are "fully-empowered United States Attorneys" as opposed to "subordinates assuming the role of 'Acting' United States Attorney." *United States v. Gantt*, 194 F.3d 987, 999 n.5 (9th Cir. 1999), overruled on other grounds by *United States v. W.R. Grace*, 526 F.3d 499, 506 (9th Cir. 2008) (en banc).

The Attorney General's § 546(a) appointment authority is time-limited. Under subsection (c), an interim U.S. Attorney may serve for "120 days after appointment by the Attorney General." This 120-day limit was added to the statute in 2007. Preserving United States Attorney Independence Act of 2007, Pub. L. No. 110-34, § 2 121 Stat. 224, 224. This time limit was specifically designed to address concerns that presidential administrations were improperly using interim U.S. Attorney appointments to avoid the Senate's constitutional advice-and-consent function.

When an Attorney General's § 546(a) appointment expires, the authority to appoint an interim U.S. attorney shifts to the judges of the district court under § 546(d). An interim U.S. attorney appointed by the district court under subsection (d) may "serve until the vacancy is filled."

ARGUMENT

Mr. Ellison is improperly serving as a non-confirmed U.S. Attorney thrice over.

*First*, Mr. Ellison satisfies none of the criteria to be an acting officer under the FVRA. Prior to Mr. Uballez's resignation, Mr. Ellison was not an already-in-place first assistant or a Senate-confirmed officer in another role. And even if he was an already-in-place senior official in the U.S. Attorney's Office, he does not qualify as an acting officer under the FVRA because he was not appointed by the President.

Because Mr. Ellison is not a proper FVRA "acting" officer, his post-August 15 actions have no force or effect.

*Second*, and alternatively, Mr. Ellison cannot continue serving as acting U.S. Attorney under the FVRA after the expiration of his 120-day interim appointment under § 546(c). That more specific 120-day interim time limit controls over the FVRA's general-purpose provisions here—a reality confirmed by at least three statutory interpretation principles (specific-over-general, the presumption-against-surplusage canon, and the "mischief" rule). Put simply, once the administration appoints someone for interim service under § 546(a), that 120-day clock controls. Because Mr. Ellison's 120-day time-limit expired on August 15, his post-August 15 actions are unlawful.

*Third*, even if Mr. Ellison's purported appointment somehow technically complied with the statutes, the particular maneuver here poses grave Appointments Clause problems. U.S. Attorneys exercise sufficient power to be principal officers for constitutional purposes. And despite Mr. Ellison's "acting" label, the administration is attempting to capture that power by extending his term, potentially indefinitely. If the administration is right that Mr. Ellison can serve notwithstanding the statutory limits Congress imposed on temporary service, then he must be confirmed by the Senate before he can lawfully act as U.S. Attorney.

Under any framing of this issue, Mr. Ellison cannot legally exercise the duties of the U.S. Attorney. This Court should therefore dismiss the indictment against Mr. Gunther because it was secured under Mr. Ellison's time as an improperly designated acting U.S. Attorney. At a minimum, Mr. Ellison and all those under his supervision should be disqualified from participating in criminal prosecutions in this district.

**I.      Mr. Ellison is not lawfully serving as U.S. Attorney.**

**A.      Mr. Ellison is not a qualified acting officer under 5 U.S.C. § 3345.**

Mr. Ellison cannot serve as an acting officer under § 3345 because his appointment does not meet the FVRA's requirements. Although Mr. Ellison purported to resign his interim role on August 13, that action did not create a new qualifying vacancy for FVRA purposes, and he remains ineligible.

####    1.    Mr. Ellison is not eligible to fill the February 17 vacancy.

A vacancy occurred under 5 U.S.C. § 3345(a) when Mr. Uballez resigned as the Senate-Confirmed U.S. Attorney. The administration has three options to direct someone to serve as an acting officer to fill such a vacancy under § 3345(a). Two of these options do not apply to Mr. Ellison. And the only potential provision by which he could be eligible does not render his appointment valid, because there is no indication that he was designated by the President.

Under § 3345(a)(1), the first assistant to the officer becomes the acting officer. The Attorney General purported to designate Mr. Ellison as the first assistant on August 14, but that did not render him eligible for active service. Rather, for subsection (1) to operate, the individual "must be the first assistant at the time the vacancy occurs." *Giraud*, 2025 WL 2416737, at *14; *see also L.M.- M. v. Cuccinelli*, 442 F. Supp. 3d 1, 28 (D.D.C. 2020) (expressing "doubt on whether Congress intended the phrase 'first assistant' to encompass those appointed to the first-assistant position after the vacancy arose").[4]

That contemporaneity requirement—service as the first assistant at the time of the vacancy—is "convincingly" indicated by the "statutory framework" for at least two reasons. *Giraud*, 2025 WL 2416737, at *14. First, subsection (1) function[s] in a simple if-then form": "the promotion of the first assistant occurs automatically at the moment of the vacancy." *Id.* As a result, there is "no textual indication that the President has any choice in invoking the first assistant provision, nor that it is meant to trigger at any time other than the moment the vacancy occurs." *Id.* Second, allowing an administration to name its own first assistant post- vacancy and then turn that person into the acting officer "would render the limits in subsections (a)(2) and (a)(3) surplusage in the vast majority of cases." *Id.* at *15. "Those provisions set a very high bar for the President's options for a non-first-assistant acting official." *Id.* "But if the President may simply name anyone as the first assistant at any time and thereby vest them with

---

[4] See also Federal Vacancies Reform Act, S. Rep. No. 105-250, at 14-15 (1998) ("This provision allows the office to be temporarily filled by 'the person' who was originally eligible to be the acting officer at the time the vacancy arose."); id. at 12-13, 21, 34 (similar).

acting powers, these limitations on acting service are rendered entirely irrelevant." *Id.* The statute is better read to avoid these issues: only an already-serving first assistant can assume the acting title under § 3345(a)(1)—not one named after the vacancy. *Id.* Mr. Ellison cannot serve as acting U.S. Attorney under this provision.

Under subsection (a)(2), the President can alternatively designate for acting service any individual already serving in some other office that requires Senate confirmation. But Mr. Ellison has never been nominated and confirmed to any such office, and he is therefore ineligible for acting service under § 3345(a)(2).

Under subsection (a)(3), the President can designate for acting service another agency officer or employee if that individual worked in the relevant agency for at least 90 days during the 365 days preceding the vacancy and was paid at a rate equal to or greater than GS-15. On information and belief, Mr. Ellison was working in the relevant agency for the requisite timeframe. While defense counsel does not know whether he was paid at the required rate, even if, *arguendo*, he was, he was not designated by the President, rendering any designation under (a)(3) invalid. If the President seeks to designate someone other than the first assistant for acting service under the FVRA, "the President (and only the President)" must give that direction. But the President did not do so here; only the Attorney General purported to name Mr. Ellison to the role he claims to hold. *See Statement Regarding United States Attorney Ryan Ellison's Acting Appointment*, U.S. Dep't of Justice (Aug. 15, 2025), https://www.justice.gov/usao-nm/pr/statement-regarding-united-states-attorney-ryan-ellisons-acting-appointment (explaining Mr. Ellison is purporting to serve as acting U.S. Attorney "at the request of the Attorney General"); Ex. 2. Mr. Ellison's tenure is invalid for this reason.

More importantly, even a valid appointment under § 3345 would contravene the specific time-limit for U.S. Attorneys set forth at § 546, which for the reasons discussed below, must control the analysis here.

**B.    There was no qualifying vacancy in August.**

The Attorney General indicated that Mr. Ellison's ostensible resignation on August 13 created a new vacancy and that his designation as first assistant U.S. Attorney would allow him to fill that vacancy under the FVRA.  Ex. 2. That contention fails for two independent reasons: (1) only resignations of Senate-confirmed officers create a qualifying FVRA vacancy and (2) there was no real resignation here.

*First*, under § 3345(a), the resignation of an acting, interim, or other temporary officer is insufficient to create a vacancy for FVRA purposes.  Rather, a resignation triggers an FVRA vacancy if and only if the resigning official was Senate-confirmed.  5 U.S.C. § 3345(a) (making vacancy contingent on resignation of "an officer … whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate").  "[T]he person whose 'vacancy' brings the [statute] into operation must have ascended to the post through a Presidential appointment," as opposed to a temporary assignment.  *Doolin Sec. Sav. Bank v. Office of Thrift Supervision*, 139 F.3d 203, 208 (D.C. Cir. 1998) (interpreting the pre-1998 version of the statute), *superseded by statute on other grounds as recognized in Jooce v. FDA*, 981 F.3d 26, 28 (D.C. Cir. 2020).[5]  "Otherwise," the time limitations on acting service "could be easily avoided by a series of temporary replacements followed by resignations, with each resignation triggering a new" acting officer designation.  *Id.*  In his role as interim U.S. Attorney, Mr. Ellison was not Senate-confirmed, so his purported resignation from that role did not create an FVRA vacancy.

*Second*, even assuming an interim U.S. Attorney's resignation could in the abstract create a qualifying FVRA vacancy under § 3345(a), there was no such true resignation here.  His resignation letter—signed as part of a maneuver to extend rather than relinquish his temporary service—was not

---

[5] *See also Olympic Fed. Sav. & Loan Ass'n v. Dir., Off. of Thrift Supervision*, 732 F. Supp. 1183, 1195 (D.D.C. 1990) (concluding the term "officer" in the pre-1998 version of the statute means "constitutional officer," namely "an officer selected by the President with the advice and consent of the Senate")(cleaned up), *appeal dismissed and remanded*, 903 F.2d 837 (D.C. Cir. 1990). *Doolin* reached at least two additional holdings regarding the statutory scheme; in 1998, Congress amended the statutes to override those additional holdings. *See, e.g.*, *Gonzales*, 107 F.4th at 1094 (Christen, J., dissenting).  But nothing in the statutory amendments altered *Doolin*'s conclusion that a vacancy under § 3345 occurs only when a Senate-confirmed individual leaves office.

genuine. The verb "resign" means to "surrender," "[t]o formally announce one's decision to leave a job or an organization." *Black's Law Dictionary* (12th ed. 2024).  To genuinely resign from an office, the individual must actually surrender the duties of the office.  An individual is not "resigning" in any meaningful sense when, rather than surrender his duties, he purports to extend them to a materially indistinguishable role.  But that is precisely what happened here: Mr. Ellison "resign[ed] his position" as interim U.S. Attorney and, at the same time, "look[ed] forward to continuing to lead the U.S. Attorney's Office." Ex. 1.[6]  The Court should reject any suggestion that this constituted a true resignation for FVRA purposes.

A contrary understanding of the term "resignation" would lead to absurd results.  "[W]ell-accepted rules of statutory construction caution us that statutory interpretations which would produce absurd results are to be avoided." *Ariz. State Bd. for Charter Schs. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1008 (9th Cir. 2006).  Likewise, courts should not interpret a statute to frustrate clear legislative intent.  *E.g.*, *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 455-65 (1989).  If the resignation of a temporary officer were understood to create a vacancy under § 3345(a), and if a technical in-name-only resignation counted as a true resignation under the statute, then an administration could allow the temporary officer to serve as the acting officer indefinitely, merely by having the individual repeatedly resign and be re-designated.  Under that view, the relevant time limitations on acting service—and the need for a permanent nominee to receive Senate confirmation— "could be easily avoided." *Doolin*, 139 F.3d at 208.

But even if Mr. Ellison had tendered a genuine resignation and created a qualifying FVRA vacancy, he would still not be eligible for acting service as discussed above. Once that vacancy arose, he was not at that point serving as the first assistant or in a Senate-confirmed position.  *See* 5 U.S.C. § 3345(a)(1), (2).  Nor has there been any indication that the President himself tapped Mr. Ellison. *See* 5 U.S.C. § 3345(a)(2),

---

[6] Of note, Ms. Habba used this same language in her purported resignation in New Jersey: "I hereby resign my position as Interim United States Attorney . . . . I look forward to continuing to lead the U.S. Attorney's Office." *United States v. Giraud*, No. 24-cr-768, ECF No. 108-4 (D.N.J. filed July 29, 2025).

(3).

**C.    Even if Mr. Ellison were qualified under 5 U.S.C. § 3345, 28 U.S.C. § 546 controls.**

Mr. Ellison is independently barred by § 546(c)(2)'s 120-day time limit on temporary service as the U.S. Attorney. That statute sets a maximum term specific to the office of the U.S. Attorney, and the government cannot invoke the FVRA's more general timelines to tack additional days onto § 546(c)(2)'s specific limit.

At least three rules of statutory interpretation confirm as much: (1) the specific-over-general canon; (2) the presumption against surplusage; and (3) the "mischief" rule."

**1.    A non-confirmed U.S. Attorney designated under § 546(a) cannot serve more than 120 days.**

Assuming, arguendo, the administration can either designate an acting U.S. Attorney under § 3345 or an interim U.S. Attorney under § 546, the time limit of § 546 governs. The individual appointed as interim U.S. Attorney may serve for only 120 days in either an interim or acting capacity. Because Mr. Ellison has exceeded the 120-day-limit, his continued service as acting U.S. attorney is improper. Nothing in the statute resets that clock or relieves Mr. Ellison from its consequences if his service is later given some other label, like an "acting" designation under the FVRA.

This conclusion respects the "well established" and "commonplace interpretative cannon that "the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (*quoting Morales v. Trans World Airline, Inc.*, 504 U.S. 374, 384 (1992)); *Morton v. Mancari*, 417 U.S. 535, 550 (1974) ("a specific provision applying to a very specific situation" controls over a law "of general application); *United States v. Barnes*, 568 U.S. 6, 12-13 (2012) (identifying that this rule also applies across statutes enacted at different times). This cannon is often employed where "a general permission or prohibition is contradicted by a specific prohibition or permission." *RadLAX*, 566 U.S. at 645. "But the canon has full application as well to statutes . . . in which a general authorization and a more limited,

specific authorization exist side-by-side." *Id.* In either setting, "[t]he terms of the specific authorization must be complied with." *Id.*

The canon resolves any uncertainty here about the application of § 546(c)(2)'s 120-day clock. That provision specifically applies to individuals appointed for temporary service as U.S. Attorney under § 546(a). To invoke the FVRA's more general timelines for such an individual would generate a conflict between the statutes. At the very least, reliance on the FVRA's more generous timing would render the office-specific limit at § 546(c)(2) superfluous.

That conclusion is strengthened by the fact that § 546(c)'s time limit is newer than the FVRA. "[A] specific policy embodied in a later federal statute should control over construction of [an earlier] statute, even though [the earlier statute] had not been expressly amended." *United States v. Estate of Romani*, 523 U.S. 517, 530-31 (1998). Section 546(c)'s 120-day limit dates to 2007, when it was added back into the statute as part of the Preserving United States Attorney Independence Act of 2007, Pub. L. No. 110-34, § 2, 121 Stat. 224, 224. The FVRA's time limits, by contrast, date back to 1998. *See* Federal Vacancies Reform Act of 1998, Pub. L. No. 105-277, § 151(b), 112 Stat. 2681.

Congress enacted § 546(c)(2)'s specific time limit despite knowing it had the more general FVRA time limits available. That choice of an office-specific time limit controls here, and invalidates Mr. Ellison's temporary service beyond the August 15 expiration of his 120-day clock.

**2. A contrary reading would render § 546(d) superfluous.**

The administration's attempt to extend Mr. Ellison's appointment beyond the 120-days authorized by § 546(c) would improperly render § 546(d)'s judicial appointment power superfluous. That authority is triggered by the expiration of the 120-day clock. 18 U.S.C. § 546(d). But if § 546(d) is not triggered so long as the administration re-names the same person the "acting" U.S. Attorney under § 3345, judicial appointment would rarely (potentially never) happen. Section 546(d)'s judicial appointment power "would lie dormant in all but the most unlikely situations." *TRW Inc. v. Andres*, 534 U.S. 19, 31 (2001).

Courts must read statutes to give effect to each of their provisions. *Corley v. United States*, 556 U.S. 303, 314 (2009) (identifying as "one of the most basic interpretive canons[] that a statute should be construed so that effect is given to all its provisions") (cleaned up). It is thus "a cardinal principle of statutory construction that a statute ought . . . to be so construed that . . . no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc.*, 534 U.S. at 31 (cleaned up). And where, as here, a potential interpretation "renders an entire subparagraph meaningless[.]" that rule is applied "with special force[.]" *Pulsifer v. United States*, 601 U.S. 124, 143 (2024) (cleaned up). And it is even stronger still "when the subparagraph is so evidently designed to serve a concrete function." *Id.* In such settings, superfluity concerns are particularly acute. *See id.*

Those constraints cut against the administration's apparent reading here. The administration seems to believe it can simply re-name an expired § 546(a) appointee as an "acting" official under § 3345. If that is right, then § 546(d)'s judicial-appointment function would apply only in "the most unlikely situations." *TRW Inc.*, 534 U.S. at 31. Indeed, under such a view, an administration could more than double the length of its non-confirmed U.S. Attorney appointments, turning § 546(c)'s 120-day limit into 330 days—or maybe an indefinite period, by repeatedly stacking or swapping an individual's acting or interim status. And it could do so without ever having another branch of government—neither Congress nor the judiciary—evaluate the appointee. It is not evident from the administration's apparent reading that its efforts would ever trigger either Senate confirmation or § 546(d) judicial appointment. That is a surplusage problem. *See TRW Inc.*, 534 U.S. at 31.

That untenable superfluity runs directly contrary to Congress's purpose of incentivizing permanent nominations and allocating authority among the other branches. *See TRW Inc.*, 531 U.S. at 31. Indeed, as then-Deputy Assistant Attorney General Samuel Alito explained the Department's interpretation of the statute in 1986, the "statutory plan discloses a Congressional purpose that after the expiration of the 120-day period further interim appointments are to be made by the court [under § 546(d)]

rather than by the Attorney General." Memo. from Samuel A. Alito, Jr., to William P. Tyson (Nov. 13, 1986).[7]

If that were not enough, the administration's superfluity reading would contravene over a century and a half of judicial appointment power in this space. The judicial power to fill U.S. Attorney vacancies until a Senate-confirmed successor predates the Attorney General's temporary appointment power by nearly 125 years.[8] In fact, before 1986, federal district courts had exclusive authority to fill such vacancies. *See* H.R. Rep. No. 110-58, at 4 (2007). And that judicial power even existed for 20 years in modern form in Section 546—from 1966 to 1986— before the Attorney General received the 120-day, time-limited appointment power. *See id.* Judicial appointment is, in short, "the rule." *Cuomo v. Clearing House Ass'n, LLC,* 557 U.S. 519, 530 (2009). The Court should not allow the more recent "exception" of Executive Branch involvement to "swallow" that longstanding practice. *Id.*

Unsurprisingly, prior presidential administrations have avoided that result and have given effect to the § 546(d) judicial appointment power. Until now, a near expired § 546(a) appointee would typically be submitted to the appropriate federal district court for potential re-appointment under § 546(d).[9] Rather than follow that routine practice, however, this administration now embraces an interpretation of the statutes that would make § 546(d) irrelevant "in all but the most unlikely situations." *TRW Inc.*, 534 U.S. at 31. That calls its novel strategy into doubt. *See id.*; *cf. Seila Law*, 591 U.S. at 220 (identifying "a lack of a

---

[7] *Available at United States v. Pina*, No. 2:25-cr-436 (D.N.J. filed Aug. 14, 2025), ECF No. 61-1.

[8] Exclusive judicial power to fill U.S. Attorney vacancies dates to at least 1863. Act of Mar. 3, 1863, ch. 93, § 2, 12 Stat. 768 (1863) ("In case of a vacancy in the office of . . . district attorney in any circuit, the judge of such circuit may fill such vacancy, and the person so appointed shall serve until an appointment shall be made by the President, and the appointee has duly qualified."); *see generally* Bruce A. Green & Rebecca Roiphe, *Depoliticizing Federal Prosecution*, 100 Denv. L. Rev. 817, 836–37 (2023) (identifying that the judicial interim appointment power dates at least to that 1863 statute).

[9] *See generally* Ross E. Wiener, *Inter-Branch Appointments After the Independent Counsel: Court Appointment of United States Attorneys*, 86 Minn. L. Rev. 363, 399–400 (2001) (describing this historical practice); *see also, e.g.*, *Statement of U.S. Attorney Geoffrey S. Berman on Appointment by Chief Judge*, U.S. Dep't of Justice (Apr. 25, 2018), https://www.justice.gov/usao-sdny/pr/statement-us-attorney-geoffrey-s-berman-appointment-chief-judge

historical precedent" as "[p]erhaps the most telling indication of a severe constitutional problem") (cleaned up).

Defense counsel's reading, by contrast, suffers from neither a surplusage problem nor a novelty one. *See Corley*, 556 U.S. at 314. Under defense counsel's view, the FVRA time limits still have meaningful effect—they apply to all sorts of acting officials, including an acting U.S. Attorney, other than an individual who has already been selected as an interim U.S. Attorney under Section 546. *See id.*; *cf. Gorecki v. Comm'r, Social Security Admin.*, 143 F.4th 1295, 1298–1301 (11th Cir. 2025) (discussing FVRA time limits for an acting commissioner of the Social Security Administration).

Only under the defense's reading do the two statutes work together harmoniously as intended. Congress sensibly gave the Executive Branch a choice between two distinct options in a manner that protects Congress' interest in the advice-and-consent process. Without burdening the President, the Attorney General can select virtually anyone to serve under § 546(a), providing flexibility and speed in filling a vacancy. But that selection lasts only four months and cannot be extended without court approval, incentivizing a quick nomination. Alternatively, the President can intervene and make an FVRA selection—and secure its longer timeline—but the selection must come from a closed universe of senior officials, including those who have already been subjected to advice and consent, and excluding those who were previously selected under § 546.

### 3. The Court should enforce § 546's 120-day limit to prevent the "mischief" that prompted its enactment.

Section 546(c)(2)'s 120-day time limit should be strictly enforced to prevent the very "mischief" it was designed to counteract. Congress enacted § 546(c)(2) because it perceived that the Executive Branch was subverting the traditional Senate confirmation process with indefinite "interim" U.S. Attorney appointments. And that is essentially what the administration would authorize itself to do here with its potentially endless interim-followed-by-acting maneuver. Section 546 is properly interpreted to avoid that result.

A statute's meaning must be informed by the "mischief" that prompted its enactment. *See, e.g.,* *Bond v. United States*, 572 U.S. 844, 866 (2014); Samuel L. Bray, *The Mischief Rule*, 109 Geo. L. J. 967 (2021) (explaining the rule's history and collecting cases). Courts can thus properly discern the statute's meaning from "the context from which the statute arose", *Bond*, 572 U.S. at 866, especially where a statute is designed to target a particular "problem," *In re Fairfield Sentry Ltd.*, No. 22-2101, 2025 WL 2218836, at *13 (2d Cir. 2025); *see also TRW Inc.*, 534 U.S. at 29 (warning against interpretations that run "contrary to Congress' apparent intent").

As specifically relevant here, a statute should be interpreted to prevent "clever evasions" that would allow the legislatively addressed problem to continue. Bray, *The Mischief Rule*, 109 Geo. L. J. at 1005–07.[10]

These principles confirm that an administration cannot extend an interim appointee's service past § 546(c)'s 120-day limit by invoking § 3345. That 120-day clock was enacted in 2007 to combat a particular mischief that concerned Congress: the indefinite replacement of Senate-confirmed U.S. Attorneys with non-confirmed temporary appointments. In early 2006, and with minimal public discussion, Congress removed all time limits on non-confirmed "interim" U.S. Attorney appointments.[11] Then, in December 2006, the administration capitalized on its newly expanded temporary appointment powers by firing various Senate-confirmed U.S. Attorneys and indefinitely replacing them with non-confirmed interim

---

[10] *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (identifying that the Federal Arbitration Act "was enacted in 1925 in response to widespread judicial hostility to arbitration agreements," and reading the savings clause of that Act narrowly to prevent circumvention of that legislative direction); *N.L.R.B. v. Hearst Pubs.*, 322 U.S. 111, 126 (1944) (reading "employee" to cover independent contractors because "[t]he mischief at which the Act is aimed and the remedies it offers are not confined exclusively to 'employees' within the traditional legal distinctions separating them from 'independent contractors'"), *superseded by statute as recognized by Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324–25 (1992).

[11] *See* USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, § 502 (2005); *see also* H.R. Rep. No. 110-58 (2007) (noting that the time-limit removal in 2006 "was inserted quietly into the conference report on the 2005 Act, without debate").

appointees.[12] Such moves, members of Congress worried, would permit the executive to improperly skirt the Senate confirmation process—and undermine longstanding Senate practice favoring home-state Senator input in the selection of U.S. Attorney's (the so-called "blue slip" process).[13] In response, a month after the administration began installing its interim U.S. Attorneys, Senators Feinstein and Leahy introduced what would become § 546(c).[14]

The result was a 120-day limit designed to prevent lengthy use of nonconfirmed U.S. Attorneys—the core issue here. As an assortment of recent members of Congress described to the *Giraud* court, "[t]he Act reflected Congress's considered judgment—rooted in the Constitution's separation of powers framework—that the appointment of U.S. Attorneys must be subject to meaningful checks, including the Senate's advice and consent, except in limited circumstances expressly provided by law." *Giraud*, No. 24-

---

[12] *See, e.g.*, 153 Cong. Rec. S1993-01 (daily ed. Feb. 15, 2007) (statement of Sen. Leahy, Senate co-sponsor) ("We learned recently that the Department of Justice has asked several outstanding U.S. attorneys from around the country to resign their positions. . . . We also understand the Attorney General has or is planning to appoint interim replacements for the U.S. attorneys he is removing, raising a potential of avoiding the Senate confirmation process altogether."); *id.* (statement of Sen. Schumer, Senate co-sponsor) (identifying "concerns that politics was involved in several of these firings"); 153 Cong. Rec. H5553-01 (daily ed. May 22, 2007) (statement of Rep. Keller) ("[I]t is fairly obvious that the motivation behind this legislation was the dismissal of several U.S. attorneys earlier this year."); *id.* (statement of Rep. Lofgren) (identifying that the Act would address "the dismissal of eight, now nine, U.S. attorneys" and their replacement with interim appointees); *id.* (statement of Rep. Jackson-Lee) (identifying that the Act would address "that after gaining this increased authority to appoint interim United States Attorneys indefinitely, the administration has exploited the provision to fire United States Attorneys for political reasons").

[13] *See, e.g.*, 153 Cong. Rec. S1993-01 (daily ed. Feb. 15, 2007) (statement of Sen. Leahy, Senate co-sponsor) (expressing concern that an interim U.S. Attorney for the Eastern District of Arkansas had been named without "an agreement with the two home State Senators"; "Why are home State Senators not consulted in advance?"); 153 Cong. Rec. H5553-01 (daily ed. May 22, 2007) (statement of Rep. Sanchez) (expressing concern about an Executive Branch e-mail suggesting that an interim appointment would allow "the Justice Department [to] 'give far less deference to home-State Senators and thereby get (1) our preferred person appointed and (2) do it far faster and more efficiently, at less political cost to the White House.'"); *id.* (statement of Rep. Jackson-Lee) ("The President usually accepts the nominee recommended by the Senator or other official. This tradition, called 'Senatorial courtesy,' serves as an informal check on the President's appointment power.").

[14] *See* S. 214, 110th Cong. (2007). The bill passed 94–2 in the Senate, passed 306–114 in the House, and was signed into law by President Bush as the Preserving United States Attorney Independence Act of 2007, Pub. L. No. 110-34, § 2, 121 Stat. 224, 22.

cr-768, ECF No. 138-2, at 1 (Proposed Br. of Amici Former Republican Members of Congress) (D.N.J. Aug. 13, 2025). Contemporaneous Congressional analysis likewise identified the time limit would prevent administrations from subverting the Senate's confirmation role beyond the 120-day limit.[15]

Most significantly, drafters also specifically understood their efforts to prevent the Executive Branch from doing precisely what the administration is trying to do here. In the wake of the 2007 Act's passage, Senator Patrick Leahy (co-sponsor of the § 546(c) amendment and then-Senate Judiciary Committee Chairman) described the "sequential[]" interim-plus-acting maneuver—like the one at issue here—as an "erroneous" interpretation of the § 546(c) amendments that "runs afoul of congressional intent and the law":

> Yet, even as we closed one loophole, the administration has been exploiting others to continue to avoid coming to the Senate. Under the guidance of an erroneous opinion of the Justice Department's Office of Legal Counsel, the administration has been naming acting U.S. attorneys and interim U.S. attorneys sequentially. They have used this misguided approach to put somebody in place for 330 days without the advice and consent of the Senate. This approach runs afoul of congressional intent and the law.

153 Cong. Rec. S15227-01 (daily ed. Dec. 12, 2007) (Statement of Sen. Leahy); *accord* Statement of Senator Patrick Leahy to the Senate Judiciary Committee, 2008 WL 189313 (Jan. 22, 2008) (similar, describing an administration's attempted interim-plus-acting maneuver as an "erroneous" use of "the Vacancies Act"). The administration's apparent efforts to accomplish just that here requires judicial scrutiny.

In sum, the U.S.-Attorney-specific 120-day limit of Section 546(c) governs over the more general FVRA limits here. Otherwise, the district court's 150-plus-years-old statutory appointment power—and the Senate's constitutional advice-and-consent duty—are rendered meaningless. All that is particularly

---

[15] *See, e.g.*, 153 Cong. Rec. H5553-01 (daily ed. May 22, 2007) (statement of Rep. Conyers, House co-sponsor) (identifying that the Act would limit the Executive Branch from "appoint[ing] interim temporary U.S. attorneys without the customary safeguard of Senate confirmation"); *id.* (statement of Rep. Sanchez) ("This would ensure that interim U.S. Attorneys appointed since the purge scheme was hatched are not permitted to serve indefinitely and without Senate confirmation.").

troubling because Congress enacted § 546(c) to address just this sort of "mischief." The Court should thus hold that Mr. Ellison's time as U.S. Attorney was capped at 120-days under § 546(c).

**C.    The Appointments Clause requires an interim or acting U.S. Attorney to be Senate-confirmed.**

If the Court concludes that Mr. Ellison's ongoing service as acting U.S. Attorney complies with the governing statutes, it will be ratifying a vacancy scheme in which the Attorney General can designate never-confirmed individuals to serve as interim or acting U.S. Attorneys potentially in perpetuity. Such a regime is incompatible with the Appointments Clause, which requires Senate confirmation for all principal officers, including U.S. Attorneys even if just temporarily serving.

**1.    U.S. Attorneys are principal officers requiring Senate confirmation.**

The Supreme Court has historically offered differing modes of analysis for distinguishing between principal and inferior officers. Under any of these articulations, U.S. Attorneys are principal officers who must be appointed by the President and confirmed by the Senate. U.S. Const. art. II, § 2, cl. 2.[16] The same requirement applies to temporary U.S. Attorneys in the circumstances at issue here, as described below.

The Supreme Court addressed the distinction between principal and inferior officers in *Morrison v. Olson*, 487 U.S. 654 (1988), and in *Edmond v. United States*, 520 U.S. 651 (1997). Four factors supported the inferior-officer status conclusion in *Morrison*: "that the independent counsel was subject to removal by a higher officer (the Attorney General), that she performed only limited duties, that her jurisdiction was narrow, and that her tenure was limited." *Edmond*, 520 U.S. at 661 (citing *Morrison*, 487 U.S. at 671–72). Each of those factors cuts the other way here. U.S. Attorneys are removable only by the President, not the Attorney General. 28 U.S.C. § 541(c). Their sweeping duties include "prosecut[ing] all offenses against the United States," *id.* § 547(1), and litigating "all civil actions, suits or proceedings in which the United States is concerned," *id.* § 547(2). They serve as "the chief federal law enforcement official for the judicial district,"

---

[16] The Supreme Court has never directly addressed this question. Dicta in *Myers v. United States* suggested that U.S. Attorneys are inferior officers, but the issue was not before the Court in that case concerning a postmaster's removal. 272 U.S. 52, 159 (1926).

*Nadler v. Mann*, 951 F.2d 301, 305 (11th Cir. 1992) (citing *id.* §§ 541, 547)—here, that jurisdiction covers an entire state and its population of over 2 million people. Their tenure is not limited to specific matters or tasks, and their four-year terms continue indefinitely until a "successor is appointed and qualifies." 28 U.S.C. § 541(b).

Edmond clarified that *Morrison*'s factors did not constitute a "definitive test." 520 U.S. at 661. But many of the factors emphasized in *Edmond* are likewise absent as to U.S. Attorneys. No Senate-confirmed officer (like the Attorney General) exercises the "powerful tool for control" that is removal from office. *Id.* at 664. And U.S. Attorneys routinely and unilaterally "render a final decision on behalf of the United States," *id.* at 665, for example, by exercising "plenary authority with regard to federal criminal matters" "within" their districts, and through "authorization[] to take all necessary steps to protect the interests of the United States" "in a great many instances" of civil litigation, *see* U.S. Dep't of Just., Just. Manual §§ 9-2.001, 4-1.300.[17]

The fact that the Attorney General supervises the work of U.S. Attorneys in some respects does not defeat their status as principal officers. Even extensive supervision and oversight by a Senate-confirmed official cannot render supervisees inferior if they exercise significant and binding executive authority on their own. *See United States v. Arthrex, Inc.*, 594 U.S. 1, 16–17 (2021). In finding an Appointments Clause problem with respect to Administrative Patent Judges, the Supreme Court explained, "In all the ways that matter to the parties who appear before the [Patent Trial and Appeal Board], the buck stops with the APJs, not with the Secretary or Director." *Id.* at 17; *see also Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1339 (D.C. Cir. 2012) ("We find that, given the [Copyright Royalty Judges'] nonremovability and the finality of their decisions . . . the Librarian's and Register's supervision functions still fall far short of the kind that would render the CRJs inferior officers."). So, too, with U.S.

---

[17] Available at https://www.justice.gov/jm/justice-manual

Attorneys. For the mine-run of defendants, the local U.S. Attorney's Office initiates the prosecution, controls dismissal, and negotiates binding plea agreements without approval or review by Washington, D.C. The buck stops with them—not the Attorney General.

### 2.    Temporary U.S. Attorneys serving lengthy terms are principal officers requiring Senate confirmation.

Mr. Ellison's designation as an interim or acting U.S. Attorney does not solve the constitutional problem. Unbounded by the time limitations imposed by Congress, Mr. Ellison's service is temporary in name only, so he is serving in a principle-officer role that requires Senate confirmation.

Courts have historically conferred inferior-officer status on individuals designated to serve temporarily in roles that would otherwise be categorized as principal officers. *See, e.g.*, *United States v. Eaton*, 169 U.S. 331, 343–44 (1898) (acting Consul General); *Rop v. Fed. Hous. Fin. Agency*, 50 F.4th 562, 569–74 (6th Cir. 2022) (acting Federal Housing Finance Agency Director). But that principle has always presumed compliance with the significant limitations imposed by Congress on temporary service. Officials acting on a temporary basis are inferior when they serve "for a limited time, and under special and temporary conditions." *Eaton*, 169 U.S. at 343. In *Rop*, the Sixth Circuit recognized "concerns that a President could abuse [a vacancy] provision by unilaterally firing the [Federal Housing Finance Agency] Director and indefinitely replacing him with an Acting Director, with no intent of ever seeking the advice and consent of the Senate." 50 F.4th at 571. Those concerns were "alleviate[d]" because Congress can set limits on the President's ability to fill vacancies, including by restricting the circumstances in which the vacancy can be filled and by setting a time limit on the acting official's service. *Id.*; *accord id.* at 585 (Thapar, J., concurring in part and dissenting in part) (rejecting the proposition that an acting official can constitutionally "perform every function of his office indefinitely, with no end in sight" and "limited only by the President's inclination to appoint a successor"). The government's current approach to designating temporary U.S. Attorneys—potentially in perpetuity—carries insufficient limitations and therefore violates the Appointments Clause. As Justice Thomas has explained, there is "nothing 'special and temporary' about"

indefinite acting service in a principal-officer role, and "the structural protections of the Appointments Clause" cannot "be avoided based on such trivial distinctions" like merely labeling someone an acting official. *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. at 313 n.1 (Thomas, J., concurring).

The Court can and should resolve this motion based on the statutory arguments set out above. But if it concludes that Mr. Ellison's acting service complies with the governing statutes as a technical matter, the Constitution provides a backstop, and the Court should reject Mr. Ellison's continued service as incompatible with the Appointments Clause. At a minimum, it should resolve the statutory arguments in the defense's favor to avoid these substantial constitutional concerns.

## II.    The Court should dismiss the indictment and the Article III judges of this district should select an interim United States Attorney.

Because Mr. Ellison is not validly serving as the acting United States Attorney, the Court must apply an appropriate remedy. *Cf. Lucia v. SEC*, 585 U.S. 237, 251 (2018) ("[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief.") (cleaned up). The Court should dismiss the indictment with or without prejudice. Additionally, it should disqualify Mr. Ellison from service as acting United States Attorney, along with any attorneys acting under his direction. Finally, the judges of this district should then select an interim United States Attorney under § 546(d).

### A.    The Court should dismiss the indictment and, at a minimum, disqualify Mr. Ellison.

On information and belief, Mr. Ellison purported to approve this prosecution in his capacity as acting United States Attorney by authorizing the signing and filing of the indictment on <DATE OF INDICTMENT>. Because the signing and filing postdates August 15 (the end of his interim service), the indictment is invalid, and the Court should dismiss it.

United States Attorneys control federal prosecutions within their districts. Under 28 U.S.C. § 547, the U.S. Attorney "shall—(1) prosecute all offenses against the United States" in the district. "The United States Attorney, within his/her district, has plenary authority with regard to federal criminal matters." U.S.

Dep't of Just., Just. Manual § 9-2.001. "The authority is exercised under the supervision and direction of the Attorney General and his/her delegates." *Id.* The United States Attorney has a "statutory duty" under § 547 "to prosecute for all offenses against the United States." *Id.* The position carries "the broadest discretion in the exercise of such authority." *Id.* "The authority, discretionary power, and responsibilities of the United States Attorney with relation to criminal matters encompass," among other things, "[i]nvestigating suspected or alleged offenses," "[d]eclining prosecution," "[a]uthorizing prosecution," and "[d]etermining the manner of prosecuting and deciding trial related questions." *Id.*

Because the United States Attorney decides whether to authorize a prosecution, and because Mr. Ellison lacked statutory authority to serve as acting United States Attorney (and thus authorize the filing of the indictment when it was filed), the indictment in this case is invalid. The Court should remedy the error by dismissing the indictment. *See United States v. Trump*, 740 F. Supp. 3d 1245, 1302–04 (S.D. Fla. 2024) (concluding the appropriate remedy for an invalidly appointed prosecutor is to dismiss the indictment).

Among other reasons, dismissal of the indictment is: (1) necessary because the invalid indictment implicates Mr. Gunther's constitutional right to due process; and (2) appropriate under the court's inherent supervisory authority to dismiss an indictment based on government misconduct. *See, e.g.*, *United States v. Kilpatrick*, 821 F.2d 1456, 1465 (10th Cir. 1987*) (explaining a court may dismiss an indictment when government misconduct creates a due process violation and to deter illegality and protect judicial integrity).

When an invalidly serving acting United States Attorney purports to authorize a prosecution, the defendant is deprived of the statutory and constitutional right to have a duly appointed or designated (as opposed to an invalid) United States Attorney approve the proceedings. Dismissal is an appropriate remedy authorized by this Court's supervisory powers. *Kilpatrick*, 821 F.2d at 1477 (noting the Supreme Court "set out the three purposes underlying [supervisory power] use: 1) to remedy the violation of recognized rights; 2) to preserve the integrity of the judicial process; and 3) to deter illegal conduct." (*citing US v. Hasting*, 461 U.S. 499. 505 (1983)).

The dismissal should be with prejudice, not without, unless and until the District of New Mexico obtains a legitimate United States Attorney. *See United States v. Morrison*, 449 U.S. 361, 365 (1981) (noting the remedy utilized in exercise of supervisory powers must be "tailor[ed]" to the violation in order to "neutralize the taint" caused thereby.) Dismissal with prejudice is the only available way to deter the administration's improper attempts, now spanning multiple districts, to circumvent congressional limits on acting or interim officers.[18] A lesser remedy will insufficiently deter similar conduct in the future.

Dismissal with prejudice is also consistent with the remedy in § 3348(d)(1), which provides that "[a]n action taken by any person who is not" properly serving as an acting officer "in the performance of any function or duty of a vacant office . . . shall have no force or effect." Under § 3348(d)(2), such actions "may not be ratified" later. This "Ratification Bar . . . applies only to those duties of an officer that are nondelegable." *Gonzales v. Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.,* 107 F.4th 1064, 1073 (9th Cir. 2024). The nondelegable duties can be created either by statute or regulation. *See* 5 U.S.C. § 3348(a)(2).

The statutory and regulatory schemes provide no indication the United States Attorney may delegate the decision whether to authorize the filing of an indictment to another employee—indeed, the Justice Manual suggests the decision belongs to the United States Attorney specifically. Thus, the Court should dismiss the indictment with prejudice. If the Court dismissed the indictment without prejudice, and if a duly directed or appointed acting, interim, or permanent United States Attorney were to refile the indictment, the refiled indictment would violate the ratification bar.

In the alternative, the Court should dismiss the indictment without prejudice, subject to refiling after authorization by a duly directed or appointed acting, interim, or permanent United States Attorney.

---

[18] *See United States v. Giraud*, 2025 WL 2196794 (D.N.J. Aug. 1, 2025); Mtn. to Dismiss, *United States v. Shamar Tyrell Garcia* 2:25-cr-230-FRB-BNW (D. Nev. Aug. 26, 2025), ECF No. 18-1; Mtn. to Dismiss, *United States v. Giann Icob Salazar Del Real* 2:25-cr-227-JAD-BNW (D. Nev. Aug. 26, 2025), ECF No. 21-1; Mtn. to Dismiss, *United States v. Devonte Devon Jackson* 2:25-cr-240-GMN-BNW (D. Nev. Aug. 26, 2025), ECF No. 21-1; Mtn. to Dismiss Indictment and Disqualify, *United States v. Ismael Garcia, Jr.* 2:25-cr-655-MEMF (C.D. Cal. Aug. 29, 2025), ECF No. 21).

*See United States v. Peralta- Ramirez*, 83 F. Supp. 2d 263, 271 (D.P.R. 2000) (ordering dismissal without prejudice as appropriate remedy), *rev'd on other grounds, United States v. Hilario*, 218 F.3d 19 (1st Cir. 2000).

If the Court concludes dismissal of the indictment is an unavailable remedy, the Court should at a minimum disqualify Mr. Ellison from participation in or supervision of this case. *See Giraud*, 2025 WL 2416737, at *30; *see also Giraud*, 2025 WL 2196794, at *7–11. The Court should also disqualify any attorneys acting under his direction. *See Giraud*, 2025 WL 2416737, at *30; *see also Giraud*, 2025 2196794, at *7–11. The proceedings in this case should then be stayed until a proper acting, interim, or permanent United States Attorney is serving in this district. In that event, the defense would anticipate filing a motion to reopen detention under 18 U.S.C. § 3142(f).

### B.    The judges of this district should select an interim U.S. Attorney.

As explained above, Mr. Ellison is not properly serving as acting U.S. Attorney. This Court therefore retains authority under § 546(d) to appoint a new interim U.S. Attorney for the district.[19] Mr. Ellison's appointment as interim U.S. Attorney expired on or about August 15, 2025, and there is not a proper acting or permanent United States Attorney serving in the position, so the vacancy created by Mr. Uballez's resignation remains unfilled.

Even if the Government argues the acting appointment of Mr. Ellison is a new appointment under § 546, the same conclusion follows. Section 546(d) should be understood to apply when an interim officer resigns shortly before the expiration of the term. Otherwise, the administration could avoid the provision entirely, through the simple expediency of indefinitely stacking successive interim appointments, with the interim appointees repeatedly resigning on day 119 of their appointment and with the administration reappointing them (or someone else) thereafter. This interpretation would render subsection (d)

---

[19] This District confronted a related issue in 2008 when the interim United States Attorney's appointment expired after 120 days. *See U.S. v. Baldwin*, 541 F.Supp.2d 1184 (2008). In response to the expiration, the Article III judges exercised their authority under § 546 and appointed a United States Attorney. *Id.* at 1187.

superfluous, *see Giraud*, 2025 WL 2416737, at *10–12, so the Court should avoid that reading of the statute.[20]

    Because Mr. Ellison's period as interim U.S. Attorney has expired, the judges of this district should exercise their authority to appoint a new interim U.S. Attorney.

<div align="center">CONCLUSION</div>

    For the reasons set forth above, this Court should void and dismiss the indictment with prejudice, disqualify Mr. Ellison from participating in criminal prosecutions in this district, and appoint a new interim U.S. Attorney.

Dated: <u>September 15, 2025</u>

 

<div style="margin-left: 40%;">

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas Blvd., NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489
(505) 346-2494 Fax
Dennis_Candelaria@fd.org


 <u>/s/ filed electronically on 9/15/25</u>
Dennis J. Candelaria, AFPD
Attorney for Julian Gunther

</div>

---

[20] Then-Deputy Assistant Attorney General Samuel A. Alito took the position in  memorandum for the Office of Legal Counsel that § 546 allows the administration only a single appointment period. The Attorney General cannot "make another appointment . . . after the expiration of the 120-day period. The statutory plan discloses a Congressional purpose that after the expiration of the 120-day period further interim appointments are to be made by the court rather than by the Attorney General." *United States v. Pina*, No. 25-cr-436, ECF No. 61-1 at 4 (D.N.J. Aug. 14, 2025).

# Exhibit

# 1



**U.S. Department of Justice**

*United States Attorney*
*District of New Mexico*

_____

201 3rd St. NW, Ste. 900          Phone: (505) 346-7274
Albuquerque, NM  87102            Fax: (505) 346-7296

August 13, 2025

Attorney General Pamela Bondi
United States Department of Justice
Robert F. Kennedy Building, Room 5111
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

Dear Attorney General Bondi:

I hereby resign my position as Interim United States Attorney for the District of New Mexico, effective at 5:00 pm today, August 13, 2025.

I look forward to continuing to lead the United States Attorney's Office for the District of New Mexico. I am honored to have your confidence to serve the people of New Mexico.

Sincerely,

RYAN ELLISON
United States Attorney

# Exhibit 2



## Office of the Attorney General
### Washington, D. C. 20530

ORDER NO.

DESIGNATION OF RYAN ELLISON AS
FIRST ASSISTANT UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW MEXICO

By virtue of the authority vested in the Attorney General by law, including 28 U.S.C.

§ 509 and 510, I hereby designate Ryan Ellison as First Assistant United States Attorney for the

District of New Mexico, effective upon his resignation as United States Attorney for the District

of New Mexico and when he returns to paid status as an Assistant United States Attorney.

During Mr. Ellison's service as United States Attorney, he has continued to encumber the

position of Assistant United States Attorney.  As First Assistant United States Attorney, Mr.

Ellison will have authority to serve as Acting United States Attorney upon a vacancy in that

office, subject to the conditions and time limitations of the Federal Vacancies Reform Act of

1998, 5 U.S.C. §§ 3345-3349d.

_8/14/25_
Date

Pamela Bondi
Attorney General

# Exhibit 3



## UNITED STATES DISTRICT COURT
### 106 S. Federal Place
### Santa Fe, NM 87501

**Kenneth J. Gonzales**
*Chief United States District Judge*

*Chambers Ph. No.*
*505-955-8830*

August 8, 2025

Ryan Ellison
United States Attorney
201 3rd Street NW, Ste. 900
Albuquerque, NM 87102

Dear Mr. Ellison,

Today I write regarding the United States District Court for the District of New Mexico's decision on whether to proceed under 28 U.S.C. § 546(d), following the expiration of your term as Interim United States Attorney for the District of New Mexico under 28 U.S.C. § 546(c)(2).

Congress has generally vested the appointment of United States Attorney in the President of the United States, by and with advice and consent of the United States Senate. 28 U.S.C. § 541(a). When a vacancy arises, however, the Attorney General may appoint a temporary United States Attorney under § 546(a). Under, § 546(c), a person appointed as United States Attorney by the Attorney General "may serve until the earlier of (1) the qualification of a United States attorney for such district appointed by the President under section 541 of this title; or (2) the expiration of 120 days after appointment by the Attorney General under this section." In your case, the 120-day period under § 546(c)(2), concludes on August 15, 2025.

Under § 546(d), the United States District Court for the District of New Mexico has the authority to appoint a United States Attorney. Specifically, § 546(d) provides, "[i]f an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled." By its terms (in particular "may"), the statute grants district courts discretion to decide whether to exercise its authority to appoint a United States Attorney under §546(d).

After careful consideration and by general agreement the District Judges decline to exercise this Court's authority under § 546(d), at this time.

Sincerely,

cc:    United States District Judges, District of New Mexico
       Mitch Elfers, Clerk of Court